Stewart, Gwynne & Co. v. Insurance Co.

STEWART, GWYNNE & CO. v. THE PHŒNIX INSURANCE
COMPANY.

1. WAREHOUSE RECEIPTS. *Assignment. Estoppel.* Warehouse receipts
are considered representatives of property, and an assignment of the
receipt is equivalent to a delivery of the property, and the warehouse-
man is estopped, as against the assignee, to deny that he had the ar-
ticles mentioned in the receipt.

2 SAME. *Contracts. Evidence.* These receipts are generally contracts,
and cannot, like ordinary receipts, be varied, explained or contra-
dicted by parol proof.

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby
county.    J. O. PIERCE, J.

MYERS & SNEED for Stewart, Gwynne & Co.

U. W. MILLER for Insurance Company.

MCFARLAND, J., delivered the opinion of the court.

The plaintiffs, The Phœnix Insurance Company of
Memphis, agreed to loan A. J. Vaughn & Co., also
of Memphis, $1500, but required security.    Stewart,
Gynne & Co., the defendants, of the same city, were
warehouse-men, and had in store cotton belonging to
A. J. Vaughn & Co.

The proof indicates that a conference was had be-
tween the secretary of the Insurance Company and a

member of each of said firms, in which it was understood that the Company was to be secured in its loan to A. J. Vaughn & Co., by a warehouse receipt of the defendants, Stewart, Gwynne & Co., for cotton. Accordingly, on the 14th of June, 1878, the loan was consummated. A. J. Vaughn & Co., executed their note of that date to the plaintiffs for $1500, due at ninety days. At the same time A. J. Vaughn & Co., delivered to the plaintiffs the following warehouse receipt:

> MEMPHIS, June 14, 1878.
> Received of A. J. Vaughn & Co., at the warehouse of Stewart, Gwynne & Co., in good order, the following cotton:
>
> | Marks. | No. Bales. | Consignee. |
> |---|---|---|
> | Various. | 40. | Forty b.c. |
>
> Guaranteed valuation, fifteen hundred dollars, deliverable only on return of this receipt endorsed by the secretary of the Phœnix Insurance Company.
> (*Signed.*)                STEWART, GWYNNE & CO.

At the maturity of the note, a yellow fever epidemic was prevailing in the city of Memphis, of which the secretary of the Insurance Company died, and business was suspended. The note was, on the 18th of November, 1878, renewed, at that time, Gwynne, a member of the firm of Stewart, Gwynne & Co., (who was also director of the Insurance Company), offered to deposit a new warehouse receipt, but the offer was declined, the Company preferring to retain the old receipt, which is specifically set out as a collateral in the renewal note.

Before the maturity of the new note, to-wit, some time in December, 1878, Gwynne called on the secretary of the Company and told him that A. J. Vaughn

& Co., had failed, and that the cotton then in the warehouse of said firm (S. G. & Co.,) on account of A. J. Vaughn & Co., was being replevied by the producers, and requested that plaintiffs take forty bales of the cotton to secure itself, or to defend the replevin suit.

The secretary of the Company then enquiring of Gwynne if the cotton then in his warehouse was the same cotton they had on hand when the receipt of the 14th of June was given, and he replied that it was not, or that he did not know that they had any of the same cotton on hand. The secretary then informed Gwynne that the Company would have nothing to do with any other cotton, or the defense of the replevin suit.

At the maturity of the renewal note the secretary of the Company called on defendants for the cotton specified in the receipt or its guaranteed value, and offered to endorse and deliver up the receipt according to its terms. The defendants replied they did not have the cotton, and declined to pay its value.

Gwynne testified that at the date of the warehouse receipt, 14th of June, 1878, his firm had in their warehouse about 115 bales of cotton for A. J. Vaughn & Co., nearly all of which was on hand at the maturity of the first note, but admits, substantially, that they had none of this cotton on hand at the time he called on plaintiffs to take away forty bales. He says further, that more than forty bales were replevied from his firm by the producers. It is not very clear, from his testimony, whether at the time the cotton was

finally demanded, there was any of the cotton of A. J. Vaughn & Co., on hand. He does not say that at that time he tendered or offered to deliver any cotton. The demand, however, was for the cotton specified in the receipt; the reply was, they did not have it.

The cause was tried without a jury, and judgment rendered for the plaintiffs for $1500, the guaranteed value of the cotton. The principal assignment of error relied upon, is the action of the judge in rejecting certain testimony offered by the defendants; that is to say, they offered to prove that it was agreed between all parties, plaintiffs, A. J. Vaughn & Co., and defendants, at the time of giving the warehouse receipt, that defendants could hold said forty bales of cotton, then at their warehouse, or any other forty bales that might afterwards come in; so they retained on hand as much as forty bales worth $1500, and this, for the purpose of giving to A. J. Vaughn & Co., the privilege of continuing to sell their cotton. That this was the reason the cotton was not more particularly described in the receipt. The proposition was stated in various forms to the court, but upon objection, the proposed testimony was excluded.

The action of the judge was based upon the familiar rule that parol evidence of previous, or cotemporaneous conversations between the parties, is not admissible, to vary the terms of a written contract. The question is whether the proposed testimony was admissible under any of the various exceptions to this general rule.

First. It is insisted that the rule does not apply to *receipts* which are always open to explanation. Such is the general rule as to receipts: See *Jones* v. *Ward*, 10 Yer., 160. The reason, probably, is that in general, a receipt is not a contract; it is usually but the evidence of a fact, as for instance, the payment of money—the delivery of property—the settlement of accounts, etc., in all which cases the receipt may be explained and the fact shown to be otherwise.

But a paper may be in the form of a receipt and yet be in substance a contract, that is, it may contain an agreement to do, or not to do some particular thing in the future. If in substance a contract, the same rule should apply that applies to other contracts.

We need not enquire what would be the rule as to a warehouse receipt between the original parties. That is to say, in this case between the defendants and A. J. Vaughn & Co. It may be conceded, that as between them, the receipts might be explained or contradicted, so as to show that no such cotton had been delivered or received; at least this may be conceded for the argument. In view, however, of the importance attaching to papers of this character, and the great extent to which they are used as collaterals in commercial transactions, a different rule, at least, has been applied, where they came to the hands of innocent parties.

By custom such receipts have come to be considered as representatives of the property, and an assignment equivalent to a delivery of the property to the assignee, and the warehouse-man is estopped as against

the assignee who has purchased in good faith to deny that he had the articles mentioned in the receipt: See Justice Miller's decision in *McNeil* v. *Hill*, 1 Woodworth's Ch. C. & Rep., 96.; also 19 Am. L. R. N. S., 566; also the general principles settled in the case of *Gibson* v. *Steney*, 8 Howard U. S., 384. So that as against an assignee who has purchased, or to whom it has been assigned in good faith for advances made, the warehouse-man cannot be permitted, by parol, to show that he had not the articles mentioned in the receipt at the time it was given. The stipulation upon the face of the receipt that the articles mentioned will be delivered only upon the return of the receipt, is a *contract* upon which the assignee has a right to rely, upon the faith of which he has acted and for the breach of which he has his action against the warehouse-man. It is, therefore, as between the makers of the receipt and an assignee who has, in good faith, taken it as security for money advanced, not simply a receipt subject to be explained and contradicted by parol proof, but a *contract*, and subject to the rules applicable to other contracts. This is not upon the ground that they are negotiable strictly, but they are *sui generis* and stand upon grounds applicable to that class of paper.

The plaintiffs in this case stand in the attitude of an assignee of the receipt in good faith, for money then advanced, without notice of any infirmity. Although upon its face the receipt shows that the cotton was to be delivered upon the return of the receipt endorsed by the secretary of the Insurance Company, and although

there is proof that the giving of the receipt was agreed upon by all the parties previously, yet the actual transaction in regard to delivering and storing of the cotton, was alone between the defendants and A. J. Vaughn & Co., with which the plaintiffs had nothing to do, or so far as appears, any knowledge. It is the same, therefore, as if the receipt had stipulated for the delivery of the cotton to A. J. Vaughn & Co., and they had assigned it to the plaintiff. Upon this ground, therefore, the testimony was not admissible.

Second. It is insisted that conceding the writing to be a *contract*, yet there was a latent ambiguity arising from the proof, which, according to the familiar rule, may be removed by parol testimony. That is to say, it appears that at the time the receipt was given, the defendants had on hand 115 bales of cotton belonging to A. J. Vaughn & Co., and the receipt does not designate or distinguish any particular forty bales out of the 115 bales, and therefore parol proof must be admitted to designate the cotton actually embraced in the receipt. The transfer of the warehouse receipt had the effect of an actual delivery of the cotton to the assignee, to be held as a pledge, and therefore the identical cotton should be designated, and it appearing that defendants had a large number of bales on hand, and the receipt not distinguishing the forty mentioned from the others, parol proof would have been admissible for this purpose, that is, to designate the bales actually embraced in the receipt. But it does not follow that parol proof is therefore admissible for all purposes. In other words, the ambiguity or uncer-

tainty arising upon the proof as to the identical bales embraced in the receipt, may be met or removed by parol testimony, but this does not open the door for the admission of parol proof generally, or for any other purpose. We need not enquire in this case whether the parol proof would have been sufficient to designate the particular cotton; it is probable the defendants would, in any event, have been liable for the value. They, as we have seen, would have been estopped as against an assignee of the receipts to deny that they had the cotton, and their inability to show that any particular bales were agreed upon to be included in the receipt, would probably be no defense for them.

Again, it is insisted that the proposed testimony should have been heard because it amounted to proof of an independant collateral agreement. The case of *Leinau* v. *Smart*, 11 Hum., 308, may be given as an illustration of this rule. There was in that case a sale and conveyance of a "tavern house" and lot, and at the same time an independant collateral parol agreement that the vendor would close up another tavern he owned in the same town. The action was for a breach of this latter contract, and the recovery was held proper. Proof of this collateral agreement, it was held, in no sense varied or contradicted the written contract.

And so also where the writing embraces only part of the contract, as where there was a written contract for the hire of a horse for six weeks at two guineas, parol proof was admitted that the hirer was responsi-

ble for all accidents.    So in the case of *Cobb* v. *Wallace*, 5 Cold., 539, there was in the first instance a parol contract for the purchase of a load of coal, and for hiring a barge to transport the coal from Hawsville, Kentucky, to Nashville, the barge to be returned as soon as the coal was unloaded.    Afterwards, on delivery, there was a written receipt which specified the quantity and price of the coal, and also the hiring of the barge "at three dollars a day until the barge is returned."    The suit was for the failing to return the barge, and the question was when it should have been returned.    It was held, in substance, that proof of the previous parol contract was admissible, and it was for the jury to say whether the writing was intended to embrace all that it was finally agreed upon.    It will be observed that under these authorities, parol proof may be heard as to an independent collateral agreement, or where there has been a parol agreement and a part only reduced to writing, the whole contract may be proven, *but in neither case is the writing to be contradicted.*

*Ellis* v. *Hamilton*, 4 Sneed, 512, was an action upon a note or bill for the payment of a given sum on a particular day.    The defense of the surety was, that at the time the note was given there was a further agreement, in substance, that the payee of the note was to receive payments in a different mode, and that the obligation of the surety was not absolute.    The defense was held inadmissible, as this was to contradict the written contract.

We have only to apply these principles to the pres-

ent case. We have seen that the warehouse receipt in the hands of the plaintiffs was a written contract, by which the defendants agreed that they held forty bales of cotton delivered to them by A. J. Vaughn & Co., which they promised to hold for the plaintiffs, and deliver to it upon the return of the receipt endorsed by its secretary. The transfer of this contract vested the right of this particular forty bales of cotton in the plaintiffs, to be held as a pledge for the security for their debt. The parol testimony offered was to show, that at the time the receipt was given, the contract was not that any particular forty bales of cotton were to be held, but that defendants were to keep on hand as much as forty bales of cotton worth $1500, belonging to A. J. Vaughn & Co., subject to this receipt. That they were at liberty, at any time, to exchange the cotton for any other forty bales of equal value. We think the evidence was properly rejected. It was certainly not an independent collateral agreement; there was but the one contract, either the one specified in the receipt or the parol contract which the defendants offered to prove. Both contracts cannot stand. They are different in their terms and in their practical results, and one must give way to the other.

Nor is it a case where only part of the contract was reduced to writing. As we have seen in such cases, there is to be no conflict between the parol contract and the writing. They stand together, and are consistent. The only difference is, the writing does not embrace it all. In our opinion, the parol proof in

8—VOL. 9.

this case contradicts the writing, and is therefore not admissible. It is not easy to see the necessity or advantage to the parties at the time of varying the terms of the receipt, as it is insisted was done. It is admitted that defendants were, at all times, to keep on hand as much as forty bales of cotton, worth $1500. They might as well keep the original forty bales as any other. We see no reason, at that time, to make such stipulation.

The practical difference is, that if defendants are allowed to change the contract according to the parol proof offered by them, they claim that the cotton last on hand was taken by a superior title to A. J. Vaughn & Co., and as warehousemen are not warrantors of the title, they are excused.

It is finally insisted, that the obligation of the defendants was in the nature of a guaranty, and that they were entitled to notice, but we think it clear that no notice was necessary.

Upon the whole, we think there is no error in the record, and the judgment will be affirmed.